FILED

RICHARD J. REYNOLDS    STATE BAR NO. 89911
ELIZABETH DOLAN SCOTT  STATE BAR NO. 241376
TURNER, REYNOLDS, GRECO & O'HARA
A Law Corporation
16485 Laguna Canyon Road, Suite 250
Irvine, California 92618-3837
Telephone:   949 474-6900
Facsimile:   949 474-6907
E-Mail:      rreynolds@trlawyers.com
             escott@trlawyers.com

2010 DEC -7  PM 12: 57

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

**Attorneys for** Defendants MTC FINANCIAL INC., dba TRUSTEE CORPS
(erroneously sued at MTC Financial, Inc. dba Trustee Corps)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

# ED CV 10 - 01896     VAP

| | |
|---|---|
| MAURILLO MARTINEZ, an individual, | ) CASE NO. _____ |
| Plaintiffs, | ) Riverside Superior Court |
| vs. | ) Case No. RIC10022549    (DTBx) |
| ONEWEST BANK, F.S.B., an entity whose form is unknown; MTC FINANCIAL, INC. dba TRUSTEE CORPS, an entity whose form is unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a corporation; CITIBANK, N.A. AS TRUSTEE FOR CERTIFICATEHOLDERS OF SACO 1 TRUST 2006-9, MORTGAGE-BACKED CERTIFICATES, SERIES 2006-9; an entity whose form is unknown; and DOES 1 through 50, inclusive, | ) **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §§ 1441(b), 1446 [Federal Question]** |
| Defendants. | ) |

## TO THE CLERK OF THE ABOVE-ENTITLED COURT:

**PLEASE TAKE NOTICE** that Defendants MTC FINANCIAL INC.,dba

TRUSTEE CORPS hereby removes to this Court the State Court action described below.

On November 23, 2010, an action was commenced in the Superior Court of the State

of California in and for the County of Riverside, entitled <u>MAURILLO MARTINEZ, an</u>

<u>individual, Plaintiffs vs. ONEWEST BANK, F.S.B., an entity whose form is unknown;</u>

<u>MTC FINANCIAL, INC. dba TRUSTEE CORPS, an entity whose form is unknown;</u>

1   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a corporation;

2   CITIBANK, N.A. AS TRUSTEE FOR CERTIFICATEHOLDERS OF SACO 1 TRUST

3   2006-9, MORTGAGE-BACKED CERTIFICATES, SERIES 2006-9; an entity whose form

4   is unknown; and DOES 1 through 50, inclusive, Defendants, as Case No. RIC10022549.

5   MTC Financial Inc. was served on December 2, 2010.  A true and correct copy of that

6   Complaint is attached hereto and incorporated by reference as Exhibit "A."  A true and

7   correct copy of the Summons is attached hereto and incorporated herein by reference as

8   Exhibit "B."

9       This action is a civil action of which this Court has jurisdiction and is one which

10   may be removed to this Court by Defendants in that it alleges violations of the provisions

11   of 11 U.S.C. §362.  No other Defendants have been served.

13   Dated:  November 29, 2010       **TURNER, REYNOLDS, GRECO & O'HARA**

15       By: *Richard J Reynolds*

16       RICHARD J. REYNOLDS
       ELIZABETH DOLAN SCOTT

17       Attorneys for Defendants, MTC FINANCIAL
       INC., dba TRUSTEE CORPS

Moses S. Hall, Esq., (SBN 153759)
**LAW OFFICE OF MOSES S. HALL**
2651 E. Chapman Avenue, Suite 110
Fullerton, California 92831
Telephone: (714) 738-4830
Fax: (714) 992-7916

Attorney for Plaintiff,
MAURILLO MARTINEZ

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

NOV 23 2010

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF RIVERSIDE

RIVERSIDE HISTORIC COURTHOUSE

| | |
|---|---|
| MAURILLO MARTINEZ, an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>ONEWEST BANK, F.S.B., an entity whose form is unknown; MTC FINANCIAL, INC. dba TRUSTEE CORPS, an entity whose form is unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a corporation; CITIBANK, N.A. AS TRUSTEE FOR CERTIFICATEHOLDERS OF SACO 1 TRUST 2006-9, MORTGAGE-BACKED CERTIFICATES, SERIES 2006-9; an entity whose form is unknown; and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No. :   RIC   10 22 5 49<br><br>COMPLAINT FOR:<br><br>1.  WRONGFUL FORECLOSURE BASED UPON STATUTORY VIOLATIONS<br>2.  CANCELLATION OF TRUSTEE SALE<br>3.  RESCISSION<br>4.  VIOLATION OF 11 U.S.C. § 368 |

## I.   COMMON ALLEGATIONS

Plaintiff MAURILLO MARTINEZ alleges:

1.   At all relevant times herein, Plaintiff MAURILLO MARTINEZ (hereinafter referred to as "Plaintiff") was an individual residing in the County of Riverside, State of California.

2.   Defendant ONEWEST BANK, F.S.B. (hereinafter referred to as "ONEWEST") is an

COMPLAINT

EXHIBIT ___A___
PAGE ___3___

1    entity whose form is unknown which, at all relevant times, was doing business as a real estate
2    financial lender in the state of California.

3        3.    Defendant MTC FINANCIAL, INC. dba TRUSTEE CORPS (hereinafter referred to
4    as "MTC") is an entity whose form is unknown which, at all relevant times, was doing business
5    as a trustee and foreclosure agent acting on behalf of ONEWEST and MORTGAGE
6    ELECTRONIC REGISTRATION SYSTEMS, INC (hereinafter referred to as "MERS").

7        4.    Defendant MERS is a corporation which, at all relevant times, was doing business in
8    Riverside County, California as a nominee for Defendant ONEWEST.

9        5.    Defendant CITIBANK, N.A. AS TRUSTEE FOR CERTIFICATEHOLDERS OF
10   SACO 1 TRUST 2006-9, MORTGAGE-BACKED CERTIFICATES, SERIES 2006-9
11   (hereinafter referred to as "CITIBANK") is an entity whose form is unknown which, at all
12   relevant times, was doing business as a real estate lender in Riverside County, California.

13       6.    The true names or capacities, whether individual, corporate, associate or otherwise
14   of Defendants named herein as DOES 1 through 50, inclusive, are unknown to Plaintiff who
15   therefore sues said Defendants by such fictitious names, and Plaintiff will amend this complaint
16   to show their true names and capacities when the same have been ascertained.

17       7.    At all times relevant herein, each of the Doe Defendants was the agent, servant,
18   representative and/or employee of each of the remaining Defendants and was at all times acting
19   within the course and scope of such agency and/or employment, or was in some way the cause of
20   Plaintiff's damage.

21       8.    The complained of actions occurred from November 2009 and continue throughout
22   2010, well within all applicable statutes of limitation.

### PLAINTIFF'S CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### WRONGFUL FORECLOSURE BASED ON STATUTORY VIOLATIONS

#### (Against All Defendants)

27       9.    Plaintiff incorporates paragraphs 1 through 9, inclusive, as though fully set forth
28   herein.



COMPLAINT                      EXHIBIT  A
                               PAGE  4

10. Plaintiff, at all times relevant to this Complaint, was the owner of the real property commonly known as 1513 Sweet Bay Drive, Perris, California 92571. This property will hereinafter be referred to as "Subject Property."

11. On or about May 4, 2006, Plaintiff obtained a thirty-year mortgage from DHI Mortgage Company, LTD., L.P. in the amount of $357,984.00 for the Subject Property. A true and correct copy of said mortgage is attached as **Exhibit "1"** to this complaint and is incorporated by this reference as though set out in its entirety.

12. MERS was to act solely as a nominee for DHI Mortgage Company, LTD., L.P. and was also named as the Beneficiary under the Deed of Trust.

13. Plaintiff owned and continually occupied, as his principal residence, the real property subject to the aforementioned mortgage.

14. Subsequently, the DHI Mortgage Company, LTD., L.P.'s interest in the deed of trust was transferred to, assumed by, bought by, or in some manner acquired by Defendant ONEWEST.

15. On or about March 11, 2009, ONEWEST, acting through IndyMac Federal Bank, F.S.B. authorized MTC to initiate a non-judicial foreclosure proceeding on Plaintiff's residence, by causing a Notice of Default and Election to Sell under Deed of Trust to be recorded against Plaintiff's residence. A true and correct copy of the Notice of Default is attached as **Exhibit "2."**

16. Plaintiff filed for bankruptcy on January 12, 2010.

17. On or about January 29, 2010, MERS granted, assigned and transferred to CITIBANK all beneficial interest under the Deed of Trust. A true and correct copy of the Assignment of Deed of Trust is attached as **Exhibit "3."**

18. On or about July 21, 2010, ONEWEST caused MTC to file and record a Notice of Trustee's Sale on Plaintiff's residence. The sale was set to take place on August 11, 2010. A true and correct copy of the Notice of Trustee's Sale is attached as **Exhibit "4."**

19. Plaintiff's property was sold to the foreclosing beneficiary on October 13, 2010.

20. Plaintiff's bankruptcy case was dismissed and the automatic stay was vacated on October 14, 2010. A true and correct copy of the Order and Notice of Dismissal is attached as

COMPLAINT

EXHIBIT _____
PAGE _____

1 | Exhibit "5."

2 | 21. As such, the Trustee's Sale occurred while the automatic stay resulting from the
3 | Bankruptcy proceeding was still in place.

4 | 22. Accordingly, the Trustee's Sale was conducted in violation of the automatic stay and
5 | thus is *void ab initio* under the ruling of *Far Out Productions, Inc. v. Oskar* (9th Cir. 2001) 247
6 | F3d 986.

7 | 23. Further, under California law, to perfect the transfer of mortgage paper as collateral
8 | the owner must physically deliver the note to the transferee. Without physical transfer, the sale of
9 | the note could be invalid as a fraudulent conveyance under California Civil Code section 3440.
10 | Such a conveyance is only valid under California Commercial Code 3109, 3201, 3203, 3204 if
11 | the note is endorsed with an inference that the endorsement is from the original lender to the new
12 | buyer of the note. Only then may the new holder of the note authorize an agent to foreclose on
13 | the subject property.

14 | 24. According to California Civil Code 2936, the promissory note and the deed of trust
15 | are inseparable. An assignment of the note carries the mortgage with it, while the assignment of
16 | the deed of trust alone is a nullity.

17 | 25. Pursuant to Paragraph (E) of Plaintiff's mortgage, MERS is the beneficiary under
18 | said mortgage. However, MERS is not the owner of the promissory note and therefore, not
19 | authorized to conduct a foreclosure proceeding against Plaintiff's property absent a finding that
20 | the promissory note has in fact been endorsed to MERS.

21 | 26. Since MERS did not own the promissory note, it could not transfer the beneficial
22 | interest of the deed of trust to CITIBANK, nor a subsequent grantee. Thus, the scheduled trustee
23 | sale of Plaintiff's property was wrongful.

24 | 27. Defendants' actions proximately caused Plaintiff to suffer damages in an amount
25 | which will be proven at trial.

26 | 28. As a result of these wrongful acts and omissions, Plaintiff has been precluded from
27 | properly curing any default in his mortgage and also from all the rights and benefits that go along
28 | with a person's ability to own and reside in a home.

COMPLAINT

EXHIBIT A
PAGE 6

29.  As a result of these wrongful acts and omissions, Plaintiff has been precluded from benefiting from the rights granted by Civil Code section 2924(b), Civil Code section 3440 and attempting to modify his current loan to a principal amount and an interest rate which he could not only afford, but would allow him to stay in his home.

## SECOND CAUSE OF ACTION

### CANCELLATION OF THE TRUSTEE SALE

#### (As Against All Defendants)

30.  Plaintiff incorporates paragraphs 1 through 29, inclusive, as though fully set forth herein.

31.  By virtue of Defendants' initiation of foreclosure proceedings based upon violation of the aforementioned statutory provisions, as well as the afore-described breach of the mortgage agreement by the Defendants, the Notice of Default and all subsequent foreclosure proceedings should be canceled.

32.  Furthermore, as the sale was void *ab initio* as it was conducted while the Bankruptcy stay was still in effect, the Sale should be cancelled.

33.  Plaintiff requests that Defendants be ordered to cancel the foreclosure proceedings, as well as the Trustee's Deed Upon Sale, against his property.

## THIRD CAUSE OF ACTION

### RESCISSION

#### (As Against All Defendants)

34.  Plaintiff incorporates paragraphs 1 through 33, inclusive, as though fully set forth herein.

35.  Based on the alleged statutory violations, as well as the violation of the automatic stay, Plaintiff requests that the Trustee's Sale be rescinded.

COMPLAINT

EXHIBIT A
PAGE 7

## FOURTH CAUSE OF ACTION

### VIOLATION OF 11 U.S.C. § 368

### (As Against All Defendants)

36. Plaintiff incorporates paragraphs 1 through 35, inclusive, as though fully set forth herein.

37. The plaintiff filed a voluntary petition under chapter 7 of the Bankruptcy Code on January 12, 2010.

38. At the commencement of the chapter 7 case, Plaintiff owned and occupied the Subject Property.

39. At the time of the filing of the petition under chapter 7, Defendant ONEWEST held a first lien on said property.

40. Defendants, without having obtained from this court a modification of the automatic stay afforded by 11 U.S.C. § 362, proceeded to foreclose on said property on October 13, 2010, and recorded its foreclosure deed in the Clerk's office of Riverside County, California on or about October 13, 2010.

41. The automatic stay was not vacated until October 14, 2010. Please see **Exhibit "5."**

42. Thus, the foreclosure sale in violation of 11 U.S.C. § 362, is void, and should be set aside.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them on all causes of actions as follows:

**As to the first cause of action for wrongful foreclosure:**

1.   For a compensatory damage award according to proof;

2.   For exemplary and punitive damages in the sum of one million dollars ($1,000,000.00) from each Defendant.

3.   For such other and further relief as the court deems just and proper.

**As to the second cause of action for cancellation of trustee sale:**

COMPLAINT

EXHIBIT _A_
PAGE _8_

1.  Cancellation of any sale of Plaintiff's residence;

2.  For a compensatory damage award according to proof;

3.  For costs of suit;

4.  For a rescission of the Notice of Default and any subsequent Notice of Trustee sale

5.  For such other and further relief as the court deems just and proper.

**As to the third cause of action for unfair business practices**

1.  For an order restraining Defendants from engaging in any further unfair business Practices of the type to be proven at the time of trial;

2.  For a compensatory damage award according to proof;

3.  For costs of suit;

4.  For reasonable attorneys' fees;

5.  For such other and further relief as the court deems just and proper.

**As to the fourth cause of action for violation of 11 U.S.C. § 362**

1.  For a judgment of the court setting aside the foreclosure conducted by Defendants;

2.  For a cancellation of the foreclosure deed;

3.  For the foreclosure deed to be stricken from the record of the Riverside County Clerk's office;

4.  And for such other and further relief as is just and proper.

DATED: November 23, 2010

LAW OFFICES OF MOSES S. HALL,

BY: _Moss S. Hall_

MOSES S. HALL,
Attorney for Plaintiff,
MAURILLO MARTINEZ

EXHIBIT _A_
PAGE _9_

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

EXHIBIT _A_
PAGE _10_

CTC

Recording Requested By:
DHI Mortgage Company
Post Closing Department
Return To:
DHI Mortgage Company
Post Closing Department
12357 Riata Trace Pkwy,
Suite C150
Austin, TX 78727
000487034 320
Prepared By:



DOC # 2006-0386448
05/26/2006 08:00A Fee:54.00
Page 1 of 18
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder



| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|------|------|----|----|-----|-----|------|
|   |   |   | 16   |      | 1  |    |     |     |      |
| A | R | L |      |      | COPY | LONG | REFUND | NCHG | EXAM |

|Space Above This Line For Recording Data|

# DEED OF TRUST

54

MIN 100020410001145270

T
DA

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated May 4, 2006
together with all Riders to this document.
(B) "Borrower" is Maurilio Martinez, a married man as his sole and separate
property

Borrower's address is 1513 Sweet Bay Drive
Perris, CA 92571                               . Borrower is the trustor under this Security Instrument.
(C) "Lender" is DHI MORTGAGE COMPANY, LTD., L.P.

Lender is a Limited Partnership
organized and existing under the laws of Texas

000487034

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS      Form 3005  1/01

-6A(CA) (0207)
Page 1 of 15          Initials: MM

VMP MORTGAGE FORMS - (800)521-7291

EXHIBIT     A
PAGE        11



Lender's address is **12357 Riata Trace Pkwy, Suite C150 Austin, TX  78727**
(D) "Trustee" is **Chicago Title Company**

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated **May 4, 2006**
The Note states that Borrower owes Lender **three hundred fifty-seven thousand nine hundred eighty-four and 00/100** Dollars
(U.S. $**357,984.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **June 1, 2036**
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider           ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider                ☐ Biweekly Payment Rider      ☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6A(CA) (0207)                Page 2 of 15        Initials: _____      000487034
                                                              Form 3005  1/01

EXHIBIT ___A___
PAGE ___12___

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

County                              of            Riverside            :
[Type of Recording Jurisdiction]                        [Name of Recording Jurisdiction]

SEE ATTACHED LEGAL DESCRIPTION HERETO AND MADE A PART HEREOF

Parcel ID Number:

1513 Sweet Bay Drive                         which currently has the address of

Perris                                                                        [Street]

("Property Address"):                 [City], California 92571            [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

-6A(CA) (0207)                          Page 3 of 16              Initials: MM        000487034
                                                                          Form 3005   1/01

EXHIBIT ___A___
PAGE ___13___

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials: _____

000487034

Form 3005   1/01

EXHIBIT ___A___
PAGE ___14___

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

EXHIBIT _____A_____
PAGE _____15_____

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

EXHIBIT _A_

PAGE _16_

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6A(CA) (0207)                                        Page 7 of 15                    Initials: _____        000487034

                                                                                      Form 3005   1/01

**EXHIBIT** _A_

**PAGE** _17_

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

EXHIBIT ___A___

PAGE ___/8___

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

EXHIBIT _A_

PAGE _19_

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

EXHIBIT _A_

PAGE _20_

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

-6A(CA) (0207)                        Page 11 of 15          Initials: _____        000487034

Form 3005   1/01

EXHIBIT ___A___

PAGE ___21___

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

EXHIBIT ___A___

PAGE ___22___

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

-6A(CA) (0207)                    Page 13 of 15                    Initials: _____         000487034

                                                                                               Form 3005   1/01

EXHIBIT _____ A

PAGE _____ 23

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                                    Maurilio Martinez                -Borrower

_____                    _____ (Seal)
                                                                                     -Borrower

_____ (Seal)             _____ (Seal)
                               -Borrower                                            -Borrower

_____ (Seal)             _____ (Seal)
                               -Borrower                                            -Borrower

_____ (Seal)             _____ (Seal)
                               -Borrower                                            -Borrower

000487034
Form 3005   1/01

EXHIBIT___A___
PAGE___24___

State of California
County of Riverside

} ss.

On May 16, 2006

before me. Holly Ferguson, Notary Public

personally appeared

Maurilio Martinez

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Holly Ferguson (Seal)

HOLLY FERGUSON
Commission # 1547363
Notary Public - California
San Bernardino County
My Comm. Expires Feb 23, 2009

-6A(CA) (0207)

Page 15 of 15

Initials:

000487034

Form 3005   1/01

EXHIBIT ___A___

PAGE ___25___

EXHIBIT "A"

PARCEL 1:

LOT 58 OF TRACT 29425-1, IN THE CITY OF PERRIS, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER THAT TRACT MAP RECORDED IN BOOK 380, PAGE(S) 15-22 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY.

FURTHER RESERVING THEREFROM SUCH EASEMENTS DESCRIBED IN THE DECLARATION DESCRIBED BELOW AND THE MAP OF RECORD REFERENCED ABOVE, AND SUCH OTHER EASEMENTS AS MAY BE OF RECORD AS OF THE DATE HEREOF.

PARCEL 2:

THE REAL PROPERTY CONVEYED IN THIS GRANT DEED (THE "PROPERTY") IS ACCEPTED SUBJECT TO THAT CERTAIN DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATION OF EASEMENTS OF HARMONY GROVE RECORDED IN THE OFFICIAL RECORDS OF THE COUNTY RECORDER OF RIVERSIDE COUNTY, CALIFORNIA ON JULY 6TH, 2005 AS INSTRUMENT NO. 2005-0537489, AND ANY AMENDMENTS THERETO NOW OF RECORD OR WHICH WILL BE OF RECORD PRIOR TO THE RECORDATION OF THIS GRANT DEED (COLLECTIVELY, THE "DECLARATION"), ALL OF WHICH ARE INCORPORATED HEREIN BY REFERENCE TO THIS GRANT DEED WITH THE SAME EFFECT AS THOUGH FULLY SET FORTH HEREIN. AS MORE PARTICULARLY DESCRIBED IN THE DECLARATION, THE PROPERTY IS CONVEYED SUBJECT TO CERTAIN EASEMENTS RESERVED BY GRANTOR. GRANTEE, IN ACCEPTING THIS GRANT DEED AND THE CONVEYANCE HEREUNDER, DOES HEREBY AGREE, JOINTLY AND SEVERALLY, THAT GRANTEE WILL PROMPTLY, FULLY AND FAITHFULLY COMPLY WITH AND CONFORM TO THE DECLARATION.

THE PROPERTY IS ALSO CONVEYED AND ACCEPTED SUBJECT TO THAT CERTAIN NOTICE OF NON-ADVERSARIAL PROCEDURES UNDER CIVIL CODE SECTION 912(f) WHICH HAS BEEN OR WILL BE RECORDED IN THE OFFICIAL RECORDS OF THE COUNTY RECORDER OF RIVERSIDE COUNTY, CALIFORNIA, AND ANY AMENDMENTS THERETO NOW OF RECORD OR WHICH WILL BE OF RECORD PRIOR TO THE RECORDATION OF THIS GRANT DEED (COLLECTIVELY, THE "NOTICE"), ALL OF WHICH ARE INCORPORATED HEREIN BY REFERENCE WITH THE SAME EFFECT AS THOUGH FULLY SET FORTH HEREIN.

EXHIBIT___A___
PAGE___26___

19

Glenn M. Perrell Atty @ law

[RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:]

Trustee Corps
2112 Business Center Drive,
2nd floor
Irvine, CA  92612

DOC # 2009-0120364
03/12/2009 08:00A Fee:15.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|-----|------|------|-----|------|
|   |   |   | 2    |      |     |      |      |     |      |
| M | A | L | 465  | 426  | PCOR| NCOR | SMF  | NCHG| EXAM |
|   |   |   |      |      |     |      |      |     | 051  |
|   |   |   |      |      | T:  |      | CITY | UNI |      |

Trustee Sale No. CA0535094      Loan No. 1007882648

(15)

C
051

## IMPORTANT NOTICE
# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION**, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$31,023.21** as of **03/11/2009** and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or Mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the Note and Deed of Trust or Mortgage, the Beneficiary or Mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the Beneficiary or Mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the Beneficiary or Mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your Beneficiary or Mortgagee may mutually agree in writing prior to the time the Notice of Trustee's Sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.

EXHIBIT ___A___
PAGE ___27___

Trustee Sale No. CA0535094   Loan No. 1007882648
### ATO CONTROL NO.  22253AYGW2EZ

To find out the amount you must pay, to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**INDYMAC FEDERAL BANK, F.S.B.**
**c/o TRUSTEE CORPS**
**2112 BUSINESS CENTER DRIVE**
**2ND FLOOR**
**IRVINE, CA  92612**
**(949) 252-8300**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN THAT:** MTC FINANCIAL, INC. dba TRUSTEE CORPS is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated 05/04/2006, executed by MAURILLO MARTINEZ, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY, as Trustor, to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as Beneficiary and DHI MORTGAGE COMPANY, LTD., L.P., as Lender Recorded on 05/26/2006 as Document No. 2006-0388448 of official records in the Office of the Recorder of Riverside County, California, as more fully described on said Deed of Trust. Including a Note(s) for the sum of $357,984.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

That by reason thereof, the present Beneficiary under such Deed of Trust, has executed and delivered to TRUSTEE CORPS, said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

THE BENEFICIARY OR BENEFICIARY'S AUTHORIZED AGENT HAS COMPLIED WITH CIVIL CODE SECTION 2923.5 AND THE TRUSTEE HEREIN HAS EVIDENCE OF THE FORGOING IN ITS FILE.

DATED: 3/12/09

TRUSTEE CORPS, as Agent for INDYMAC FEDERAL BANK, F.S.B.

By LSI Title Company, as agent

*H. Madrigal, Agent*

TRUSTEE CORPS IS A DEBT COLLECTOR.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

EXHIBIT   A
PAGE   28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 3

EXHIBIT _____ A _____
PAGE _____ 29 _____

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY

RECORDING REQUESTED BY:
Mortgage Electronic Registration Systems, Inc., solely
as nominee for DHI Mortgage Company, LTD., L.P.

PREPARED BY AND WHEN
RECORDED MAIL TO:
Pite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
(858) 750-7700

12

4396881

APN:
MIN: 100020410001145304

DOC # 2010-0098597
03/04/2010 08:00A Fee:18.00
Page 1 of 1
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|-----|------|------|-----|------|
| M | A | L | 465 | 428 | PCOR | NCOR | SMF | NCHG | EXAM |
| | | | | | | | T: | CTY | UNI | 012 |

## ASSIGNMENT OF DEED OF TRUST

T
012

18

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to Citibank, N.A.,
as Trustee for Certificateholders of SACO I Trust 2006-9, Mortgage-Backed Certificates, Series
2006-9 all beneficial interest under that certain Deed of Trust dated May 4,
2006, executed by
Maurilio Martinez, a married man as his sole and separate property, to Chicago Title Company as
trustee, for Mortgage Electronic Registration Systems, Inc., solely as nominee for DHI Mortgage
Company, LTD., L.P., as beneficiary, and recorded as Instrument No. 2006-0386449 on
May 26, 2006, in the State of California, Riverside County, Recorder's Office. Together with the
money due and to become due thereon with interest, and all rights accrued or to accrue under the
instrument secured by the Deed of Trust.

Dated: 1.29.10

Mortgage Electronic Registration Systems, Inc., solely
as nominee for DHI Mortgage Company, LTD., L.P.
By:
Its: Vice President

State of TEXAS )
County of TARRANT ) ss.
On 1.29.10 )
Chris Leal   before me, Jennifer Short Notary Public, personally appeared
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of TEXAS that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public

(This Area for Official Notary Seal)

JENNIFER SHORT
My Commission Expires
November 27, 2010

000009-11269516-P

EXHIBIT A
PAGE 30

[RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:]

**Trustee Corps**
30 Corporate Park, Suite 400
Irvine, CA  92606

DOC # 2010-0340146
07/21/2010 08:00A Fee:21.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|-----|------|------|-----|------|
|   |   |   | 2    |      |     |      |      |     |      |
| M | A | L | 465  | 426  | PCOR | NCOR | SMF | NCHG | EXAM |
|   |   |   |      |      |     | T:   | CTY | UNI | 025 |

Trustee Sale # CA0535094   Loan# 1007882648   Order # 090130999

# NOTICE OF TRUSTEE'S SALE

T 025

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 05/04/2006.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On 08/11/2010 at 09:00AM, MTC FINANCIAL INC., dba TRUSTEE CORPS as the duly appointed Substituted Trustee under and pursuant to Deed of Trust Recorded on 05/26/2006 as Document No. 2006-0386448 of official records in the Office of the Recorder of Riverside County, CALIFORNIA, executed by, MAURILLO MARTINEZ, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY, as Trustor, DHI MORTGAGE COMPANY, LTD., L.P., as Beneficiary,

WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable at time of sale in lawful money of the United States, by cash a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state).  AT: At the front steps to the entrance of the former Corona Police Department, at 849 W. Sixth Street Corona, CA.

The property heretofore described is being sold "as is".  All right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State describing the land therein:  APN # 320-420-026-1

**AS MORE FULLY DESCRIBED ON SAID DEED OF TRUST**

The street address and other common designation, if any, of the real property described above is purported to be:

**1513 SWEET BAY DRIVE, PERRIS, CA 92571**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.  Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the Note(s) secured by said Deed of Trust, with interest thereon, as provided in said Note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.  The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Trustee's Sale is: **$416,296.79 (estimated amount).** Accrued interest and additional advances, if any, will increase this figure prior to sale.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.**

The Beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell.  The undersigned caused said Notice of Default and Election to Sell to be recorded in the County where the real property is located and more than three months have elapsed since such recordation.

EXHIBIT ___A___
PAGE ___31___



Form odspa-odspab VAN-21
Rev. 12/09

## United States Bankruptcy Court
## Central District Of California

### 3420 Twelfth Street, Riverside, CA 92501-3819

## ORDER AND NOTICE OF DISMISSAL FOR
## FAILURE TO FILE SCHEDULES, STATEMENTS AND/OR PLAN

**DEBTOR INFORMATION:**
Maurilio Martinez

**BANKRUPTCY NO.** 6:10-bk-40944-CB

**CHAPTER** 13

**Last four digits of Social-Security or Individual Taxpayer-Identification (ITIN) No(s)., (if any):** xxx-xx-2750
**Employer Tax-Identification (EIN) No(s).(If any):** N/A
**Debtor Dismissal Date:** 10/14/10

**Address:**
1513 Sweet Bay Drive
Perris, CA 92571

It appearing that the debtor(s) in the above-captioned case has failed to file all the documents required under F.R.B.P. 1007 or 3015(b) within 14 days after the filing of the petition and no motion for an order extending the time to file the required documents has been timely filed in accordance with F.R.B.P. 1007(a)(5) or 3015(b),

IT IS HEREBY ORDERED THAT:

1) The case is dismissed, the automatic stay is vacated and all pending motions and adversary proceedings are moot and dismissed.

2) Any discharge entered in this case is vacated.

3) The Court retains jurisdiction on all issues arising under Bankrupcty Code § 110, 329 and 362.

Dated: October 14, 2010

By the Court,

**Kathleen J. Campbell**
Clerk of Court

(Form odspa-odspab VAN-21) Rev. 12/09

**8 / CBG**

EXHIBIT _A_

PAGE _32_

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Please See Attachment for All Named Defendants

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

MAURILLO MARTINEZ, an individual,

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

NOV 23 2010

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*   Riverside Historic Courthouse
4050 Main Street, Riverside, California 92501

CASE NUMBER:
*(Número del Caso):*   **100 225 19**
RIC

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Moses S. Hall (SBN 153759). 2651 E. Chapman Ave., Suite 110, Fullerton, CA 92831. (714) 738-4830

DATE:
*(Fecha)*   NOV 23 2010                Clerk, by   J. ALVAREZ                , Deputy
                                       *(Secretario)*                        *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):* Trustee Corps
   under: ☒ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 1-2-10

**EXHIBIT** B
**PAGE** 3

Form Adopted for Mandatory Use
Judicial Council of California

**SUMMONS**

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Martinez v. OneWest Bank, F.S.B.; et al. | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

ONEWEST BANK, F.S.B., an entity whose form is unknown; MTC FINANCIAL, INC. dba TRUSTEE CORPS, an entity whose form is unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a corporation; CITIBANK, N.A. AS TRUSTEE FOR CERTIFICATEHOLDERS OF SACO 1 TRUST 2006-9, MORTGAGE-BACKED CERTIFICATES, SERIES 2006-9; an entity whose form is unknown; and DOES 1 through 50, inclusive,

EXHIBIT _B_

PAGE _34_

Page _____ of _____

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

## ADDITIONAL PARTIES ATTACHMENT
### Attachment to Summons

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Virginia A. Phillips and the assigned discovery Magistrate Judge is David T. Bristow.

The case number on all documents filed with the Court should read as follows:

## EDCV10- 1896 VAP (DTBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=== === === === === === === === === === === === === === === === === === =

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [X] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

CIVIL COVER SHEET

I (a) PLAINTIFFS (Check box if you are representing yourself ☐)
MAURILLO MARTINEZ, an individual,

DEFENDANTS
ONEWEST BANK, F.S.B., an entity whose form is unknown; MTC FINANCIAL INC. dba
CORPS., an entity whose form is unknown; MORTGAGE ELECTRONIC REGISTRATION
INC., a corporation; CITIBANK, N.A. AS TRUSTEE FOR CERTIFICATEHOLDERS OF S
2006-9, MORTGAGE-BACKED CERTIFICATES, SERIES 2006-9, an entity whose form is
and DOES 1 through 50, inclusive

(b) Attorneys (Firm Name, Address and Telephone Number. If you are representing
yourself, provide same.)
MOSES S. HALL
2651 E. Chapman Ave., Suite 110, Fullerton, CA 92831
Tel: 714 738-4830/Fax: 714 992-7916

Attorneys (If Known)  RICHARD J. REYNOLDS/ELIZABETH DOLAN S
TURNER REYNOLDS GRECO & O'HARA
16485 Laguna Canyon Rd., #250, Irvine, CA 92618
Tel: 949 474-6900 / Fax: 949 474-907
Email: rreynolds@trlawyers.com / escott@trlawyers.com

II. BASIS OF JURISDICTION (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

III. CITIZENSHIP OF PRINCIPAL PARTIES - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

IV. ORIGIN (Place an X in one box only.)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

V. REQUESTED IN COMPLAINT:   JURY DEMAND: ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)
CLASS ACTION under F.R.C.P. 23: ☐ Yes ☒ No    ☐ MONEY DEMANDED IN COMPLAINT: $

VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
11 U.S.C. §362 - Violation of the Automatic Stay

VII. NATURE OF SUIT (Place an X in one box only.)

OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

TORTS
PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpractice
☐ 365 Personal Injury-Product Liability
☐ 368 Asbestos Personal Injury Product Liability

IMMIGRATION
☐ 462 Naturalization Application
☐ 463 Habeas Corpus-Alien Detainee
☐ 465 Other Immigration Actions

TORTS
PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities - Employment
☐ 446 American with Disabilities - Other
☐ 440 Other Civil Rights

PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/ Other
☐ 550 Civil Rights
☐ 555 Prison Condition

FORFEITURE / PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

FOR OFFICE USE ONLY:   Case Number:   ED CV 10 - 01896 VAP

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE I

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                        ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                        ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                        ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange (MTC Financial) | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _(signature)_   Date  December 3, 2010
                                      RICHARD J. REYNOLDS

     **Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |